### *AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT*

### **EXPERIENCE**

1.     Your affiant has been a law enforcement officer for approximately thirteen years. I am a federal deputized officer with the Drug Enforcement Administration. I have received training from the Maurice Turner Institute of Police Science and from senior law enforcement officers in narcotics investigations and drug recognition. I've also received training from the Drug Enforcement Administration on drug packaging, field testing, and recognition. I have obtained more than one hundred arrest and search warrants for narcotic violations. I have assisted in the execution of more than two hundred search warrants throughout the District of Columbia and the Metropolitan Area. During this time I have been involved in the arrest of more than five hundred individuals for narcotics and firearm violations. I have conducted more than one hundred interviews and have questioned narcotics traffickers about illicit drug trafficking. With this information I come to know the methods and habits of persons involved in the narcotic trade. I have also used this information to pursue traffickers and firearm violators. I have spent over one hundred hours in observation post observing the methods and habits of persons involved in selling and storing narcotics.

2.     Based upon my experience, training, and participation in narcotic investigations, I have found that narcotic traffickers and persons involved in illegal activities maintain books, records receipts, notes, ledgers, documentation, and other papers relating to the ordering, sales, and distributing of their narcotics and firearms. I know that the aforementioned items are generally maintained where persons involved in criminal activity can obtain ready access to them. I also know that these people keep their drugs and firearms inside of their homes. One reason is to prevent law enforcement officers from seizing their drugs and firearms and the other is to prevent having the proceeds of their sales from criminal activities from being robbed from inside their homes. The person involved in the narcotics
trafficking and illegal activities also keep firearms in their homes for protection from rival persons involved in criminal activity separate from theirs.

3.     The facts and information contained in this affidavit are based upon your affiant's personal knowledge, observations of other government officials, witness interviews and other sources of

information.  Not all of the facts known to me or to the government are described in this affidavit.

### INVESTIGATION (OPERATION CARIBBEAN MADNESS)

4.      This investigation was initiated in January 2005 with the assistance of a Cooperating Witness. Your affiant was subsequently introduced to a male subject identified as **Anthoney Stewart A.K.A. Pops**, herein who will be referred to as **Pops** and **Gilbert Hugh Thomas A.K.A. Bill**, herein who will be referred to as **Bill**.  Your affiant acting in a undercover capacity has met with Pops to purchase substantial amounts of crack cocaine on four separate occasions, prior to January 2006.  The amount of crack cocaine purchase during these sales total more than 900 grams of cocaine base, all paid for using MPDC funds.

On January 11, 2006, your affiant initiated surveillance in the 14000 block of Weeping Willow Drive, Silver Spring, Maryland.  At approximately 2050 hours, a male subject was observed parking a **Red Ford Mustang bearing Maryland registration 8BFC27**, along side of 14212 Weeping Willow Drive.  Your affiant recognized the male subject who exited the Red Ford Mustang as **Pops**.

5.      This investigation was to conclude with a two kilogram cocaine purchase for $56,000.00 US Currency.  Within the past Seventy-two hours, your affiant spoke with **Pops** and **Bill** to make final arrangements for the two kilogram cocaine purchase.  Information was received from **Bill**, that **Pops** would meet with your affiant for the sale.  On January 26, 2006, your affiant received an incoming call (Recorded) from **Pops.**

6.      On January 26, 2006, Detective Richard Grapes initiated surveillance in the 14000 block of Weeping Willow Drive.  At approximately 1630 hours, Detective Grapes observed a male subject who was confirm by a Maryland Vehicle Administration (MVA) photo as being **Pops**, walked to the rear of a **Red Ford Mustang bearing Maryland registration 8BFC27.**  Detective Grapes stated that Pops opened the trunk of the **Red Ford Mustang** with a key, placing a bag in the vehicle.  Detective Grapes also stated that **Pops** opened the driver's side door retrieving paper, placing the papers in the

trunk. Detective Grapes states that **Pops** closed the trunk of the vehicle and walked out of Detective Grapes sight.

7..     Detective Grapes states approximately an hour later, **Pops** returned to the **Red Ford Mustang bearing Maryland registration 8BFC27**, entered the front drivers seat and exited the area driving the vehicle.

8.      Your affiant agreed to meet **Pops** on January 26, 2006 in the 7400 blk of Georgia Avenue, Northwest Washington , D.C. to purchase the two kilograms of cocaine at approximately 1800 hours (6pm). After talking with **Pops**, plainclothes officers initiated surveillance in the immediate area. Shortly thereafter your affiant entered the area waiting for **Pops** to arrive. While waiting in an undercover vehicle, your affiant received a phone call from **Pops**. After a brief conversation **Pops** approached the undercover vehicle and entered the front passenger seat. After exchanging pleasantries, your affiant showed **Pops** a paper bag which contained $17,000 MPDC funds. **Pops** attempted to get the affiant to drive to Fern St., Northwest where he stated the cocaine was. Your affiant advised Pops to walk to the location and your affiant would follow in the undercover vehicle.

9.      **Pops** was observed approaching a **Red Ford Mustang, bearing Maryland registration 8BFC27**, parked at the corner of Georgia Avenue & Fern Street, Northwest. Your affiant drove the undercover vehicle onto Fern Street, Northwest, where **Pops** again entered the undercover vehicle. **Pops** asked your affiant if the money was straight. Your affiant advised that the money was straight and advised **Pops** to get the stuff (cocaine).

10.     **Pops** exited the undercover vehicle, walking to the rear of the **Red Ford Mustang**. Shortly thereafter and for safety reasons, members of the surveillance/arrest team were signaled (audio) to move in. Pops was arrested without incident and transport to the Narcotics Special Investigations Division (N.S.I.D.). **The Red Ford Mustang bearing Maryland registration 8BFC27** was seized by Detective Dessin and Sgt. Neil and taken to N.S.I.D, where it is currently being held for Safekeeping, pending the issuance of a search warrant.

11.     **Pops** was advised of his Miranda Rights and opted to waive his rights.  Your affiant at which time debriefed **Pops**, who shortly thereafter stated that two kilograms of cocaine were in the trunk of the **Red Ford Mustang.**

12.     The **Red Ford Mustang bearing Maryland registration 8BFC27, VIN#1ZVFT80NX65138469**, is a confirmed leased vehicle.  This information was confirm through a vehicle records check with the Maryland Vehicle Administration.

13.     Every vehicle used by **Pops** that was observed by members conducting surveillance, was leased through the same leasing company.  The leasing company is identified as DMF Leasing, located in Laurel, Maryland.

## VEHICLE TO BE SEARCHED

14.     **A RED TWO DOOR FORD MUSTANG, MARYLAND TAG 8BFC27, VIN:1ZVFT80NX65138469.**

## CONCLUSION

15.     The affiant believes that cocaine is being harbored in the **Red Two Door Ford Mustang** and that probable cause exists, and respectfully request that a United States Search warrant be issue for the **Red Two Door Ford Mustang bearing Maryland registration 8BFC27, VIN: 1ZVFT60NX65138469,**

                                                                               _____

                                                                               **INVESTIGATOR**
                                                                               **STEVEN E. MANLEY**
                                                                               **NARCOTIC SPECIAL INVESTIGATION**

**Sworn to and subscribed before me on this_____ day of January 2006**

                                                                               _____

                                                                              **UNITED STATES MAGISTRATE/JUDGE**